IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-v-<br><br>JOSEPH LEE ELDABAA,<br><br>Defendant. | CR 15-11-H-CCL-02<br>CV 18-98-H-CCL<br><br>**ORDER** |

Before the Court are several documents filed by Defendant Eldabaa since October of 2018. On October 15, 2018, Defendant filed two documents: (1) a motion under 28 U.S.C. § 2255 to vacate his judgment on the grounds that he had been denied effective assistance of counsel at both the sentencing and appellate stages of his case, (Doc. 314); and (2) a supporting memorandum (Doc. 315). A request for appointment of counsel "under 18 USC S 3000A" was attached to his supporting memorandum. (Doc. 315 at 8). On the same date the motion and memorandum were filed, the clerk of court sent Defendant a standard letter informing him of the prescreening requirement. (Doc. 316).

On January 10, 2019, Defendant sent a letter to the Clerk of Court, which was filed as a "pro se letter." (Doc. 317). The letter appears to relate to an order

entered by the Court on May 4, 2019, denying Defendant's motion for release of certain funds seized at the time of his arrest. (Doc. 282).

On April 16, 2019, Defendant filed a document titled "Motion in Limine, Motion to Show Cause, Addenda to Memoranda" which was docketed as a supplement to his motion to vacate. (Doc. 318). On April 22, 2019, Defendant filed a document titled "Memorandum in Support of Motion Under 28 USC Section 2244, Motion Under USC 18 Section 3006A Addenda," which was docketed as a supplement to his motion to vacate. (Doc. 319).

On July 8, 2019, Defendant filed a document titled "Request for Judicial Notice of this Habeas," (Doc. 331).[1] On July 28, 2019, Defendant sent a letter to the undersigned asking for the current status of his 2255 motion. That request was filed by the clerk of court as a "Pro Se Motion for Status Update re: Motion to Vacate." (Doc. 332).

These filing were reviewed as they were received and found by me to be without merit. Unfortunately, there was a delay in issuing this opinion because of other pressing matters and the retirement of my 25-year career clerk.

///

---

[1] The documents filed between April 22 and July 8, 2019, relate to one of Defendant's co-defendants, who appeared for a revocation hearing on May 29, 2019.

2

**PROCEDURAL BACKGROUND**

Before addressing Defendant's pending motions, the Court first reviews the procedural background of this criminal matter. In August of 2015, the grand jury returned a multiple-count indictment against five separate defendants. (Doc. 2). Count I of the indictment charged Defendant Eldabaa and the other defendants with conspiracy to possess with intent to distribute and to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. 841(a)(1) and 21 U.S.C. 846. Count VIII charged Defendant Eldabaa and his co-defendant, Joseph Jayne, with distribution of 50 grams or more of pure methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2. Count IX charged Defendants Eldabaa and Jayne with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S,C. § 2. . Count XI charged Defendant Eldabaa with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Defendant Eldabaa first appeared to answer those charges before Magistrate Judge Lynch in Missoula, Montana, on September 1, 2015. Palmer Hoovestal, a member of the CJA panel for the Helena Division of the United States District Court, was present during Defendant Eldabaa's initial appearance and arraignment

3

and was appointed to represent him. Mr. Hoovestal filed a number of motions on Mr. Eldabaa's behalf, including a motion to suppress statements made during a custodial interrogation by Agent Ken Poteet of the Montana Department of Justice and FBI Special Agent Brandon Mercer on February 20, 2015.

The Court denied Defendant Eldabaa's motion to suppress on May 26, 2016, following an April 8, 2016, evidentiary hearing. On June 3, 2016, Defendant Eldabaa, his counsel, and counsel for the United States entered into a plea agreement. (Doc. 202). In the plea agreement, Defendant Eldabaa agreed to plead guilty to a superseding information charging him with "possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1)," an offense with a mandatory minimum of five years imprisonment and a potential maximum term of 40 years imprisonment. (Doc. 202 at 2, ¶ 2). As part of the plea agreement, Defendant reserved his right to appeal the Court's adverse ruling on his motion to suppress and the government consented to his reservation of rights. (Doc. 202 at 2, ¶ 3).

The government also agreed to dismiss the indictment, to make certain recommendations, and to refrain from filing an "Information pursuant to 21 U.S.C. § 851" even though Defendant had "one or more prior felony drug offense convictions." (Doc. 202 at 3). Had Defendant been convicted of Counts I and IX

of the original indictment, he would have faced a mandatory minimum term of 10 years on Count I and 5 consecutive years on Count IX.

Based on the concessions made by the United States in the plea agreement, Defendant Eldabaa waived his right to appeal any aspect of his sentence and his right to challenge the sentence in a proceeding under 28 U.S.C. § 2255. He reserved his right to pursue a § 2255 action based on alleged ineffective assistance of counsel.

The United States filed an Offer of Proof prior to the change of plea hearing (Doc. 206) and relied on that document to provide the factual basis for Defendant's guilty plea, which he entered on June 15, 2016. Although Defendant did not agree with all of the facts presented by the government, he admitted that he possessed five or more grams of methamphetamine and intended to distribute it.

The Court accepted Defendant Eldabaa's guilty plea and set sentencing for September 15, 2016. The Court also established a schedule for preparation and submission of the presentence report and the filing of sentencing memoranda. At Defendant Eldabaa's request, the Court continued his sentencing until October 5, 2016.

Counsel for Defendant Eldabaa raised three legal objections to the presentence report, arguing: (1) the two-level enhancement for possessing a

firearm under USSG § 2D1.1(b)(1) should be stricken because the firearm in question belonged to his co-defendant, Jayne; (2) the base offense level should be 24, as opposed to 34, because Defendant was responsible for less than 20 grams of actual methamphetamine; and (3) the resulting guideline range for a total offense level of 21 and a criminal history category of VI should be 77 to 95 months, rather than 188 to 135 months. (Doc. 250 at 38).

Defendant did not object to paragraph 38 of the final presentence report, which noted that he appeared "to meet the criteria of Career Offender" but did not adjust his offense level upward on that basis because it was already 34, based on his drug quantity. Similarly, Defendant did not object to paragraph 76 of the final presentence report, which set his criminal history score at 18 and established a criminal history category of VI. Nor did he object to paragraph 77, which notes that he "meets the criterial for Career Offender" but did not adjust his criminal history category on that basis as it was already calculated at the highest level.

Counsel for the United States addressed the career offender enhancement in a supplemental sentencing memorandum, arguing that the prior offenses referenced at paragraphs 69 and 71 of the presentence report qualified as prior felony convictions for purposes of the career offender enhancement. (Doc. 236 at 5). Defendant Eldabaa's counsel filed a supplement sentencing memorandum in

response to the government's memorandum, objecting to the application of the career offender enhancement and citing *Johnson v. United States*, 135 S.Ct. 2551 (2015). (Doc. 239 at 2 - 9).

Counsel for Defendant Eldabaa did not specifically object to paragraph 15 of the presentence report, which stated, in relevant part: "defendant played the role of a methamphetamine user, drug courier, and enforcer for lead supplier [and co-defendant] Joseph Dean Jane, Jr." (Doc. 250 at 4, ¶ 15). Counsel did, however, address this issue during the sentencing hearing, when he called his client as a witness.

At sentencing, the Court heard evidence and argument from both sides and overruled all of Defendant Eldabaa's objections to the presentence report. Counsel for the government pointed out that the Sentencing Commission had revised the definition of the term "crime of violence" in August of 2016 in response to the *Johnson* case. She argued that the two convictions referenced in the presentence report as predicate offenses for the career offender enhancement qualified as crimes of violence under the new definition. (Doc. 257 at 126 - 127).

Although the Court agreed with the government that Defendant Eldabaa fell within the career offender category, (Doc. 257 at 127), his placement in that category did not change his guideline calculations because the Court also found

that the presentence report correctly calculated his base offense level at 32, based on his responsibility for at least 150 grams of actual methamphetamine and correctly added a two-level enhancement for being in possession of a loaded semi-automatic firearm during the commission of the offense. After granting a three level reduction for acceptance of responsibility, the Court found that Defendant's total offense level was 31 and his criminal history category was VI, for a guideline range of 188 to 235 months. (Doc. 257 at 128).

The Court determined that Defendant Eldabaa's sentence was "subject to a downward variance . . . to a Level 25, with a guideline range of 110 to 137 months" and sentenced Defendant Eldabaa to a term of imprisonment of 120 months. (Doc. 257 at 128 - 129). The Court explained its reasons for the sentence on the record, noting that Defendant Eldabaa had a "highly dysfunctional childhood" and one of the worst criminal histories the Court had seen, making him "a career criminal under the law." (Doc. 257 at 133). The Court nevertheless sentenced Defendant Eldabaa below the advisory guideline range, in part based on the Court's recognition of his difficult childhood, noting that he has "the intellect and ability to be more than a career criminal." (Doc. 257 at 133). The Court also noted that it had "looked at the requirement or the need to avoid any unwarranted sentence disparities among the group here, namely the other defendants, and you."

(Doc. 257 at 136).² The Court's downward variance brought Defendant Eldabaa into the same advisory guideline range as that of his co-defendant, Calvin Craver, and the 120 month sentence imposed on Defendant Eldabaa was the same as the sentence imposed on Defendant Craver.

The Court accepted the plea agreement, thereby consenting to Defendant Eldabaa's reservation of his right to appeal the Court's adverse judgment as to his suppression motion. Counsel for Defendant Eldabaa filed the opening appellate brief on March 17, 2017, raising only the issue reserved for appeal in the plea agreement – that is whether this Court had erred by denying the motion to suppress. *United States v. Eldabaa*, No. 16-30233, Appellant's Opening Br.

While Defendant Eldabaa's appeal was pending, he sent a letter to the Clerk of Court asking whether he could "file a 2255 for ineffective councel [sic]" while his direct appeal was pending (Doc. 271) and a letter to the undersigned, in which he claimed that he was not being "represented in my best interest on my sentencing and my direct appeal." (Doc. 271-1). The Court entered an order instructing the Clerk to forward Defendant's letter to his counsel for response and denying Defendant's motion. (Doc. 272).

///

---

² The undersigned sentenced Defendant Eldabaa's four co-defendants on June 2, 2016, and therefore knew what sentences had been imposed and the basis for those sentences.

On October 30, 2017, the United States Court of Appeals for the Ninth Circuit affirmed this Court's denial of Defendant's motion to suppress. (Doc. 275). On November 22, 2019, the Ninth Circuit granted Mr. Hoovestal's motion to withdraw as counsel of record and the pro se motion filed by Defendant-Appellant Eldabaa for an extension of time to file his pro se petition for rehearing and rehearing en banc. (Doc. 276). On January 4, 2018, Defendant-Appellant Eldabaa's petition for rehearing and for rehearing en banc was denied. (Doc. 277). The mandate was filed in the Ninth Circuit on January 12, 2018, and in this Court on January 17, 2018. (Doc. 278).

**MOTION UNDER 28 U.S.C. § 2255**

Defendant Eldabaa's "Motion To Vacate, Set Aside, or Correct the Sentence" (Doc. 314) is his first such motion and was timely filed. His motion was referred to the undersigned because the undersigned imposed sentence and conducted the proceedings being challenged by the motion, as required by Rule 4(a) of the Rules Governing Section 2255 Proceedings. The Court subjects his motion to preliminary review and "must dismiss the motion and direct the clerk to notify the moving party" if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) of the Rules Governing Section 2255 Proceedings.

Defendant Eldabaa asserts four separate grounds for relief in his § 2255 motion, all relating to his perception that his counsel provided ineffective assistance. Before separately addressing each of his claims, the Court sets forth the legal standard used for deciding claims based on ineffective assistance of counsel.

Legal Standard

A defendant seeking to set aside a judgment based on ineffective assistance of counsel must satisfy the two-part test established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). Petitioner must show: (1) his counsel's performance fell below an objective standard of reasonableness, *id.* at 687 - 688; and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When considering the first prong as to a defendant calling into question his counsel's strategic decisions, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The Court must sometimes enquire into counsel's strategic decisions because courts cannot make "a *post hoc* rationalization of counsel's conduct" without regard to whether counsel actually made a strategic choice to pursue a particular course of action. *Wiggins v. Smith,*

539 U.S. 510, 526 - 27 (2003). Such enquiry is not necessary in this case because Defendant Eldabaa provided confidential letters from his counsel as attachments to his brief in support of his motion.

Ground I – Ineffective Assistance of Counsel.

Defendant Eldabaa asserts that his counsel provided ineffective assistance of counsel during and immediately following the October 5, 2016, sentencing hearing by failing to bring "very recent (2015) legal developments in the US Supreme Court ('Johnson v. United States') and the 9th US Circuit concluding that 'Attempted Assault-2' as defined in Oregon is too broad hence not comparable to a similar crime under federal law so cannot be used as a 'crime of violence' in my criminal history to enhance my federal sentence." (Doc. 314 at 4). As explained in the procedural background section, *supra*, Defendant Eldabaa's counsel raised the *Johnson* argument in his supplemental sentencing memorandum and this Court rejected that argument. At any rate, the Court did not rely on the career offender enhancement in calculating Defendant Eldabaa's total offense level.

Ground II – Ineffective Assistance of Counsel.

Defendant Eldabaa asserts that his counsel "strongly recommended that I take the 'plea deal' offered by the state and he led me to believe that by doing so that my sentence would have been no more than 77 - 96 months." (Doc. 314 at 4).

Defendant Eldabaa supports this argument by attaching a confidential letter from his counsel dated April 11, 2016, which explains the terms of the plea agreement as follows: "You can litigate actual drug amount, there's no gun enhancement, they won't file a 21 U.S.C. § 851 notice, you can appeal the denial of your suppression motion, and you get a 3-level reduction for acceptance of responsibility. The Indictment gets dismissed. That will get you down to a base offense level of 24, and with a 3-level reduction for acceptance of responsibility, you'll be at a total offense level of 21. At a criminal history category of VI . . . you'll be at a sentencing range of 77 to 96 months." (Doc. 315-1 at 29).

Although it appears that counsel miscalculated Defendant's potential guideline range when he presented the plea agreement to Defendant, that miscalculation does not warrant setting aside the judgment. Counsel for the defense can never guarantee that his prediction of the advisory guideline range is correct or that the Court will sentence his client within the guideline range. Assuming *arguendo* that counsel for Defendant Eldabaa was unreasonable in presenting his projected guideline calculation as binding on the Court, somehow satisfying the first prong of the *Strickland* test, Defendant Eldabaa cannot satisfy the second prong because he cannot show that he was prejudiced by his counsel's miscalculation of the advisory guideline range.

Defendant Eldabaa signed a plea agreement containing the following explanation of the sentencing guidelines: "Although advisory, the parties agree that the U.S. Sentencing Guidelines must be applied, and a calculation determined, as part of the protocol of sentencing to determine what sentence will be reasonable." (Doc. 202 at 7, ¶ 7). The Court went over the terms of the plea agreement during the change of plea hearing and confirmed that Defendant Eldabaa was not relying on any promises other than those contained in the plea agreement. Even if Defendant Eldabaa's counsel had failed to explain that counsel's calculation of the potential guideline range might differ from the Court's, the undersigned is satisfied that issue was adequately covered during the plea colloquy because this Court routinely explains that the advisory guideline range cannot be calculated until the presentence report is completed. Defendant cannot set aside his judgment based on his counsel's miscalculation of his advisory guideline range, just as he could not have withdrawn his plea after getting the presentence report because a "defendant cannot withdraw his plea because he realizes that his sentence will be higher than he had expected." *United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003).

Ground III – Ineffective Assistance of Counsel.

Defendant Eldabaa alleges that his counsel failed to raise the argument that

14

his sentence "should not have been enhanced by the presumption that the gun and quantity of drugs found in the car I was driving when stopped were mine as this is a matter of disputed facts." (Doc. 314 at 5). As explained in the procedural background section, *supra*, counsel for Defendant Eldabaa raised these issues in his sentencing memoranda. Counsel also presented two witnesses (Defendant Eldabaa and his friend, Holly Ledesma) at the sentencing hearing to support his argument that the Court should not include the 99.6 grams of actual methamphetamine found in the car Defendant was driving when arrested on February 20, 2015, when determining his base offense level and should not find that Defendant possessed the firearm that led to the two level enhancement. The Court found against Defendant because the evidence did not support his argument, not because of any failure by his counsel to provide effective assistance.

Ground IV

Defendant alleges that his counsel failed to raise the fact that he was only a minor player in the "Montana distribution conspiracy" and his sentence was disproportionate to that of the major players – Defendants Jayne and Frankforter. (Doc. 314 at 6). Defendant Eldabaa's counsel adequately addressed this issue by arguing that Defendant Eldabaa was not responsible for the drugs and gun found in the car he was driving. Counsel also addressed the issue of Defendant

15

Eldabaa's role in the conspiracy by calling Defendant Eldabaa and his friend as witnesses during the sentencing hearing. Although the undersigned did not specifically address the issue of Defendant Eldabaa's role in the conspiracy during the sentencing hearing, I agreed at the time and continue to agree with the probation officer's characterization of Defendant Eldabaa as the enforcer in the conspiracy of which Defendant Jayne was the leader.[3]

Defendant Eldabaa is correct that the Court departed downward when sentencing Defendants Jayne and Frankforter based on motions made by the government. The Court considered the facts set forth in the presentence report, at the hearing on Defendant Eldabaa's motion to suppress, and during his sentencing hearing and determined that Eldabaa's role in the conspiracy was that of an enforcer, and therefore warranted greater punishment than that imposed on Defendant Frankforter but less punishment than that imposed on Defendant Jayne, the leader of the conspiracy. While the Court did not depart downward in imposing sentence on Defendant Eldabaa, the Court granted a downward variance, resulting in a sentence 30 fewer months than that imposed on Defendant Jayne.

---

[3] Defendant Jayne appealed his sentence and the Ninth Circuit held, in an unpublished opinion, that the "undisputed facts in the presentence report reflect that Jayne procured the drugs from suppliers for others to transport and distribute and had another co-conspirator act as his 'muscle.'" (Doc. 270 at 2). Defendant Eldabaa was the "muscle" referenced in Defendant Jayne's presentence report.

**CONCLUSION**

Defendant Eldabaa was represented in the proceedings before this Court and on appeal by Palmer Hoovestal. Mr. Hoovestal was admitted to the State of Montana Bar and the bar of this Court in September of 1990 and became a member of the CJA Panel for the Helena Division of this Court shortly after his admission. He specializes in criminal law and has been practicing before the undersigned for approximately twenty-eight years. Defendant Eldabaa admits in his "Motion for Appointment of Counsel Under 18 USC S3000A" that he "received the assistance of 'jailhouse' lawyers and an outside pro-bono legal researcher in his composition" of his § 2255 motion. (Doc. 315-1 at 8). It appears from the undersigned's review of the record that Defendant Eldabaa may have been in touch with an "outside pro-bono legal researcher" since at least October of 2016, when he was still represented by Mr. Hoovestal. (Doc. 315-1 at 28, email from Sharp to Hoovestal dated Oct. 6, 2016). Mr. Hoovestal appropriately declined to file a petition for rehearing on Defendant Eldabaa's appeal and moved to withdraw, noting that Defendant Eldabaa had questioned whether he was providing effective assistance. It is unfortunate that Defendant chose to rely on the advice of someone who appears to lack legal training rather than on the advice of his highly skilled attorney when deciding whether to file a rehearing petition.

The Court having completed its preliminary review of Defendant Eldabaa's § 2255 motion, attached exhibits, and the record of prior proceedings and determined that Defendant Eldabaa is entitled to no relief,

IT IS HEREBY ORDERED that Defendant's motion to set aside the judgment (Doc. 314) is DENIED.

IT IS FURTHER ORDERED that Defendant's "Pro Se Motion for Status Update re: Motion to Vacate" (Doc. 332) is DENIED as moot.

IT IS FURTHER ORDERED that, to the extent that any of the documents filed by Defendant Eldabaa between October 18, 2018, and today's date were intended to be filed as motions, those motions are DENIED.

Dated this 17th day of September, 2019.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE